T.C. Summary Opinion 2006-11

UNITED STATES TAX COURT

RICHARD BRADLEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5285-04S.                Filed January 26, 2006.

Richard Bradley, pro se.

<u>Anthony J. Kim</u>, for respondent.

PANUTHOS, <u>Chief Special Trial Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect at the time the petition was filed.  The decision to be entered is not reviewable by any other court, and this opinion should not be cited as authority.  Unless otherwise indicated, subsequent section references are to the Internal

Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Respondent determined a $9,831 deficiency in petitioner's 2001 Federal income tax and a $1,686 accuracy-related penalty under section 6662(a). After concessions[1] by the parties, the issues for decision are: (1) Whether petitioner must include in gross income early distributions of $15,322.69 and $7,000 from separate retirement plans; (2) whether a loan petitioner received from a retirement plan is taxable as a distribution to the extent of $7,089.95; and (3) to the extent there were early distributions as described above, whether the distributions are subject to the 10-percent additional tax under section 72(t).

## Background

Some of the facts have been stipulated, and they are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. At the time of filing his petition, petitioner resided in San Leandro, California.

In 2000 and 2001, petitioner was employed by Circle International Group, Inc. (CIG), as a building manager and engineer. During 2000 and 2001, petitioner was a participant in a CIG-sponsored section 401(k) retirement plan, and he maintained

---

[1] Petitioner concedes that he received taxable unemployment compensation of $3,557 in tax year 2001. Respondent concedes that petitioner is not liable for a $1,686 accuracy-related penalty under sec. 6662(a).

a section 401(k) account with CIG during both years.  The CIG plan was administered by Merrill Lynch Trust Co., FSB (Merrill Lynch).  In July 2000, petitioner borrowed $9,000 against his section 401(k) account.  Petitioner's earnings statement for 2000 reflects that petitioner repaid $3,420.42 on a section 401(k) plan loan.  The record is unclear as to whether the loan payments were credited to the loan he received in July 2000 or to a loan he received in a prior year, or whether the payments were applied to more than one loan.  Further, to the extent there was a loan in 2001, the terms of the loan and the record of repayments are not made part of the record.

In 2001, CIG was acquired by Eagle Global Logistics (Eagle). Petitioner was employed by Eagle after the merger and remained an employee with the company for several months in 2001.  Eagle offered a retirement plan to its employees, and petitioner maintained a retirement account during his employment.  The Eagle retirement plan was administered by ING Life Insurance and Annuity Co. (ING).

In 2001, petitioner received a distribution of $15,322.69 from a CIG-sponsored retirement plan.  A Form 1099-R, Distributions From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., issued to petitioner by Merrill Lynch reflected the number "1" as the

distribution code, indicating that petitioner received an early distribution subject to a 10-percent additional tax.

Petitioner received a second distribution in 2001 of $7,000 from the Eagle retirement plan.  ING issued to petitioner a check for $5,460, representing the net proceeds of the $7,000 distribution (ING withheld $1,400 and $140 from the distribution for Federal and State taxes, respectively).  A Form 1099-R issued by ING reflected the number "1" as the distribution code, indicating that petitioner received an early distribution subject to a 10-percent additional tax.

Respondent determined that petitioner received a third distribution in 2001 of $7,089.95 from a CIG-sponsored retirement plan.  A Form 1099-R issued to petitioner by Merrill Lynch reflected the letter "L" as the distribution code, indicating that petitioner received a loan which was treated as a distribution, subject to a 10-percent additional tax.

In December 2001, petitioner suffered physical injuries due to a cerebral brain hemorrhage, resulting in partial memory loss. Petitioner had not yet attained 59-1/2 years of age at the time of the distributions in 2001.

The Internal Revenue Service (IRS) provided assistance with the preparation of petitioner's return.  Petitioner provided the IRS with the appropriate Form W-2, Wage and Tax Statement, and at least some of the Forms 1099-R.  Petitioner timely filed the 2001

return.  On line 16a petitioner entered $22,413,[2] which is apparently the sum of the $15,322.69 and $7,089.95 distributions. He reported $8,613 on line 16b as income.  While it appears that the $8,613 represents the sum of the $7,089.95 loan distribution and $1,532 of the $15,322.69 distribution, the total of those two amounts is $8,621.95.  The record does not explain this apparently erroneous computation.  However, petitioner does not dispute receipt of either distribution.

Petitioner did not report the $7,000 distribution on the return.  Respondent, however, received an information return from ING, indicating a $7,000 distribution to petitioner from the Eagle retirement plan.

On December 29, 2003, respondent issued a notice of deficiency.  Petitioner timely filed a petition on April 21, 2004.

The primary adjustment in dispute as set forth in the notice of deficiency is the increase in pension and annuity income as follows:

| | 2001 Return | | |
| | Shown on return | Proposed changes by IRS | Proposed change to income |
| Pension & annuity | $8,613 | [1]$29,412 | $20,799 |

[1]  The adjustment includes two distributions from Merrill Lynch and one distribution from ING.

---

[2]  Amount rounded to the nearest dollar.

Petitioner asserts that the IRS's failure to include the entire $15,322.69 distribution in gross income on the return increased his tax liability. He further argues that he should not be responsible for the deficiency because of economic hardship. Petitioner makes no argument regarding the $7,000 distribution from ING other than asserting that he does not remember receiving it. As to the $7,089.95 distribution, petitioner does not deny that he received a loan from a section 401(k) plan or that the distribution may be includable in gross income, but argues that the loan balance reflected by Merrill Lynch is not correct.

Respondent asserts that the proceeds from each distribution are includable in petitioner's gross income and that petitioner is subject to the 10-percent additional tax as each distribution was premature and none of the exceptions under section 72(t)(2) applies.

## Discussion

### I. Burden of Proof

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). The burden may shift to the Commissioner if the taxpayer introduces credible evidence and satisfies the requirements under section 7491(a)(2) to substantiate items, maintain required records, and fully

cooperate with the Commissioner's reasonable requests. Sec. 7491(a). Petitioner has neither argued that section 7491 is applicable to shift the burden of proof to respondent nor established that he complied with the requirements of section 7491(a)(2). Therefore, the burden of proof remains with petitioner.

## II. Distributions of $15,322.69 and $7,000

### A. General

Section 408(d)(1) provides that any amount paid or distributed from a qualified retirement plan generally must be included in gross income by the distributee in the manner provided under section 72. A qualified retirement plan includes a section 401(k) plan. Secs. 401(a), (k)(1), 4974(c)(1). Petitioner's CIG-sponsored section 401(k) plan is a qualified retirement plan.

### B. Distribution of $15,322.69

In 2001, petitioner received a Form 1099-R from Merrill Lynch indicating a $15,322.69 distribution from a CIG-sponsored retirement plan. Petitioner reported the distribution on line 16a of his return. The income reported on line 16b should have included the entire $15,322.69. Petitioner contends that he should not be responsible for the difference between the amount reflected on the return as a distribution ($15,322.69) and the amount reported on the return as income ($1,532), a difference of

$13,790.69, because respondent's agent made the error and because petitioner is suffering economic hardship.  Essentially, petitioner argues that the doctrine of equitable estoppel should apply against respondent.

"Equitable estoppel is a judicial doctrine that 'precludes a party from denying his own acts or representations which induced another to act to his detriment.'"  Hofstetter v. Commissioner, 98 T.C. 695, 700 (1992) (quoting Graff v. Commissioner, 74 T.C. 743, 761 (1980), affd. 673 F.2d 784 (5th Cir. 1982)).  It is well settled, however, that equitable estoppel does not bar or prevent the Commissioner from correcting a mistake of law, even where a taxpayer may have relied to his detriment on that mistake.  Dixon v. United States, 381 U.S. 68, 72-73 (1965); Auto. Club of Mich. v. Commissioner, 353 U.S. 180, 183 (1957); see also Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962), affg. in part and revg. in part 32 T.C. 998 (1959); Zuanich v. Commissioner, 77 T.C. 428, 432-433 (1981).  An exception exists only in the rare case where a taxpayer can prove he or she would suffer an unconscionable injury because of that reliance.  Manocchio v. Commissioner, 78 T.C. 989, 1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983).  Moreover, equitable estoppel is applied "against the Government with utmost caution and restraint".  Schuster v. Commissioner, supra at 317.

The doctrine of equitable estoppel is not applicable unless the party relying on it establishes all of the following elements at a minimum: (1) A false representation or wrongful, misleading silence by the party against whom estoppel is invoked; (2) an error in a statement of fact and not an opinion or statement of law; (3) ignorance of the facts; (4) adverse effects of acts or statements of the person against whom an estoppel is claimed; and (5) detriment suffered by the party claiming estoppel because of his or her adversary's false representation or wrongful, misleading silence. Norfolk S. Corp. v. Commissioner, 104 T.C. 13, 60 (1995), affd. 140 F.3d 240 (4th Cir. 1998); Estate of Emerson v. Commissioner, 67 T.C. 612, 617-618 (1977); Megibow v. Commissioner, T.C. Memo. 2004-41; see also Lignos v. United States, 439 F.2d 1365, 1368 (2d Cir. 1971).

The IRS employee made a mistake of law by including only $1,532 as the taxable portion of the $15,322.69 distribution, instead of the entire distribution of $15,322.69. Equitable estoppel does not bar respondent from correcting a mistake of law unless petitioner would suffer an unconscionable injury because of his reliance on respondent's mistake. Under these circumstances, it is not unconscionable to require petitioner to pay the tax due on income he has admitted receiving. Petitioner

cannot claim an unconscionable injury.[3]  Petitioner also claims that economic hardship prevents him from paying the deficiency. That argument does not affect the taxability of the distribution.

Respondent's determination that the $15,322.69 distribution is includable in gross income is sustained.

C.  Distribution of $7,000

Petitioner received a Form 1099-R from ING for tax year 2001 indicating a $7,000 distribution to petitioner from an Eagle-sponsored retirement plan.  Petitioner received a net amount of $5,460.  At trial, petitioner testified that he could not remember receiving a distribution from ING or depositing a check dated October 26, 2001, for $5,460 into his bank account.

Respondent, however, received an information return from ING reflecting petitioner's name, his Social Security number, the plan name (Eagle USA Air Freight), and the plan number.  The check in the amount of $5,460 from ING was issued in petitioner's name and deposited or cashed in a bank where petitioner has an account.  Petitioner has not presented any evidence to indicate that he did not receive this distribution. Respondent's determination that the $7,000 distribution is includable in gross income is sustained.

---

[3]  Petitioner also fails to satisfy other elements of collateral estoppel.

III.  Loan of $7,089.95

    A.  General

    Section 402(a) provides that distributions from qualified plans are taxable to the distributee in the taxable year in which the distribution occurs, pursuant to the provisions of section 72.  Section 72(p)(1)(A) treats certain loans from a qualified employer plan to a participant or beneficiary as taxable distributions.  See generally Plotkin v. Commissioner, T.C. Memo. 2001-71; Patrick v. Commissioner, T.C. Memo. 1998-30, affd. per curiam without published opinion 181 F.3d 103 (6th Cir. 1999); Prince v. Commissioner, T.C. Memo. 1997-324; Estate of Gray v. Commissioner, T.C. Memo. 1995-421.  A "qualified employer plan" includes a plan described in section 401(a) that includes a trust exempt from tax under section 501(a).  Petitioner's section 401(k) plan is a qualified employer plan.  See sec. 72(p)(4)(A)(i)(I).

    Section 72(p)(1)(A) provides that if a participant or beneficiary receives, directly or indirectly, any amount as a loan from a qualified employer plan, then that amount shall be treated as having been received by the individual as a distribution under the plan.  A loan from a qualified employer plan gives rise to a deemed distribution that is taxable in the year in which the loan is received.  Id.

B.  Distribution of $7,089.95

As indicated, petitioner received a Form 1099-R from Merrill Lynch for tax year 2001 indicating a $7,089.95 distribution from a CIG-sponsored retirement plan.  The designation code, "L," indicated a loan from a retirement plan.  Petitioner does not argue that the payment is not a loan or that it should not be included on his return in gross income.  Petitioner argues that the balance of the loan as reflected in statements from Merrill Lynch is incorrect.

There is nothing in this record that would establish that the payment did not give rise to a deemed distribution. Petitioner's argument that the loan balance reflected by the employer or plan administrator incorrectly states the balance due on the loan is not relevant to the issue of the taxability of the payment.  Nor has petitioner established that he comes within any of the exceptions relating to deemed distributions.  See sec. 72(p)(2)(A).  Respondent's determination that the $7,089.95 is includable in petitioner's gross income for 2001 is sustained.

IV.  Additional 10-Percent Tax for Early Withdrawal

Section 72(t)(1) imposes an additional tax on an early distribution from a qualified retirement plan equal to 10 percent of the portion of the amount which is includable in gross income. The 10-percent additional tax does not apply to certain distributions:  (1) To an employee age 59-1/2 or older; (2) to a

beneficiary (or to the estate of the employee) on or after the death of the employee; (3) on account of the employee's disability; (4) as part of a series of substantially equal periodic payments made for life; (5) to an employee after separation from service after attainment of age 55; (6) as dividends paid with respect to corporate stock described in section 404(k); (7) to an employee for medical care; or (8) to an alternate payee pursuant to a qualified domestic relations order.

Petitioner did not present evidence that he comes within any of the exceptions under section 72(t). As to petitioner's claim of economic hardship, general financial or emotional hardship is not an exception from the section 72(t) additional tax. Milner v. Commissioner, T.C. Memo. 2004-111.

Therefore, respondent's determination that petitioner is liable for the 10-percent additional tax on each distribution is sustained.

Reviewed and adopted as the report of the Small Tax Case Division.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency, and for petitioner as to the penalty under sec. 6662(a).